# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **MARIA S. TOVAR,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **ALONZO LOPEZ, Sheriff of** | § | **Jury Demanded** |
| **Zapata County, Texas, Individually** | § | |
| **and in his Official Capacity;** | § | |
| **RAYMUNDO DEL BOSQUE,** | § | |
| **Individually and in his Official** | § | |
| **Capacity; CARLOS RAMIREZ,** | § | |
| **Individually and in his Official** | § | |
| **Capacity; HECTOR GARCIA,** | § | |
| **Individually and in his Official** | § | |
| **Capacity; LUIS GARCIA,** | § | |
| **Individually and in his Official** | § | |
| **Capacity, RAMON E. MONTES,** | § | |
| **Individually and in his Official** | § | |
| **Capacity, COMMISSIONERS** | § | |
| **COURT OF ZAPATA COUNTY,** | § | |
| **TEXAS, ITS GOVERNING BODY;** | § | |
| **and ZAPATA COUNTY, TEXAS,** | §, | |
| **Defendants** | | |

## PLAINTIFF, MARIA S. TOVAR'S ORIGINAL COMPLAINT

Maria s. Tovar, Plaintiff, ["Plaintiff" or "Tovar"] complains of Alonzo Lopez, Sheriff of Zapata County, Texas, Individually and In His Official Capacity; Raymundo Del Bosque, Individually And In His Official Capacity; Carlos Ramirez, Individually And In His Official Capacity; Hector Garcia, Individually And In His Official Capacity; Luis Garcia, Individually And In His Official Capacity,    Ramon

E. Montes, Individually And In His Official Capacity; Commissioners Court Of Zapata County, Texas, Its Governing Body And Zapata County, Texas, Defendants, alleging and stating her claims for relief as follows:

## I.
## NATURE OF THIS ACTION, JURISDICTION, AND VENUE

1. This is an action brought by Plaintiff, a former detention officer with the Zapata County, Sheriff's Office in order to redress a deprivation of those rights secured to her under the Constitution and Laws of the United States.

2. Plaintiff brings her federal claims under The Fourteenth Amendment to the U.S. Constitution, The Reconstruction Era Civil Rights Acts of 1866 and 1871, codified in 42 U.S.C.§§ 1981,1981a, &1983, §§ 703 and 704 of the 1964 Civil Rights Act codified in 42 U.S.C.§§ 2000e-2(a)(1) & 2000-e-3(a) ["Title VII"] and the Age Discrimination in Employment Act of 1967 codified in 29 U.S.C. §§ 621-634 ["ADEA"].

3. Plaintiff's Fourteenth Amendment and § 1981 claims are asserted through the remedial mechanism of § 1983

4. Plaintiff invokes the Jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 1343, 29 U.S.C 626 (c) & 42 U.S.C. § 2000e-5(f).

5. Venue of Plaintiff's claims in the Laredo Division of the Southern District of Texas is prescribed by 28 U.S.C. §1391 and 42 U.S.C. §2000e-5 (f).

6.  Pursuant to 28 U.S.C. §1367, Plaintiff invokes the supplemental jurisdiction of this Court to adjudicate her state claims arising under Chapters 21 & 451 the Texas Labor Code because those claims are so related to claims in the Federal action within the original jurisdiction of this Court under the above cited statutes that they form part of the same case or controversy under Article III of the United States Constitution.

## II.
## THE PARTIES

7.  Plaintiff, Maria S. Tovar is an adult Hispanic female citizen of the United States and the State of Texas who resides in Zapata County.

8.  Plaintiff's place of birth is the Republic of Mexico.

9.  At all times relevant to this complaint, Plaintiff was over 40 years of age.

10. At all times relevant to this complaint Plaintiff was an "employee" of an "employer" under Title VII and the ADEA.

11. Defendant, Alonzo Lopez, ["Lopez", "Sheriff Lopez", and "Sheriff"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Lopez is the Sheriff of Zapata County and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

12. At all times relevant to this complaint Lopez was Plaintiff's "employer" under the ADEA and Title VII of the 1964 Civil Rights Act.

13. At all times relevant to this complaint, Lopez acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and is vested by law with the authority to hire and fire employees of the Zapata County Sheriff's Department by virtue of his election as Zapata County Sheriff in 2013.

14. Lopez is the policymaking official with respect to the hiring and firing of employees of the Zapata County Sheriff's Department. He is sued in his Official and Individual Capacities

15. Defendant Raymundo Del Bosque, ["Del Bosque"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Del Bosque is the Chief Deputy Sheriff of Zapata County and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

16. At all times relevant to this complaint, Del Bosque acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and has been delegated with authority by Sheriff Lopez to hire and fire and discipline employees of The Zapata County Sheriff's Department.

17. Defendant, Carlos Ramirez ["Ramirez"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Ramirez is a

Sergeant in the Zapata County Sheriff's Department and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

18. At all times relevant to this complaint, Ramirez acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and has been delegated with authority by Sheriff Lopez to hire and fire and discipline employees of The Zapata County Sheriff's Department. The Zapata County Sheriff's Department.

19. Defendant, Hector Garcia  ["H. Garcia" or "Hector"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Hector is a jail administrator in the Zapata County Sheriff's Department and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

20. At all times relevant to this complaint, H. Garcia acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and has been delegated with authority by Sheriff Lopez to hire and fire and/or discipline employees of The Zapata County Sheriff's Department.

21. Defendant, Luis Garcia  ["L. Garcia" or "Luis"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Luis is a

jail administrator in the Zapata County Sheriff's Department and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

22. At all times relevant to this complaint, L. Garcia acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and has been delegated with authority by Sheriff Lopez to hire and fire and/or discipline employees of The Zapata County Sheriff's Department.

23. Defendant Ramon E. Montes, ["Montes"] is an adult male citizen of the United States and the State of Texas who resides in Zapata County. Montes is a Captain in the Zapata County Sheriff's Department and may be served with process at 2311 Stop 23A or Hidalgo and 7th in, Zapata Texas 78076.

24. At all times relevant to this complaint, Montes acted under color and authority of the Constitution and Laws of the State of Texas as well as the mandates of the Zapata County Commissioners Court and has been delegated with authority by Sheriff Lopez to hire and fire and discipline employees of The Zapata County Sheriff's Department.

25. Defendant, Commissioners Court of Zapata County Texas ["Commissioners Court"] is a local governmental body created and existing under the Constitution and Laws of the State of Texas and as a whole act under color and authority thereof.

26. Commissioners Court is the policymaking body of Zapata County, Texas which creates allots and funds positions held by Plaintiff and other employees in the Zapata County Sheriff's Department and is an "employer" of the Plaintiff within the meaning of the ADEA as well as Title VII of the 1964 Civil Rights Act.

27. Commissioners Court is made a party to this action in order to afford the Plaintiff the equitable and  monetary relief to which she is entitled from Zapata County by virtue of the Sheriff and his subordinates' unlawful actions detailed below

28. Commissioners Court may be served with process through Joe Rathmell, the County Judge at 200 E. 7th Avenue, Ste. 115, Zapata, TX 78076.

29. Defendant, Zapata County, Texas ['County"]is a local governmental body politic created and existing under the Constitution and Laws of the State of Texas, acting under color and authority thereof through its Commissioners Court and present Sheriff.

30. At all times set out below, the County was Plaintiff's "employer" under Title VII of the 1964 Civil Rights Act and the Age Discrimination in Employment Act of 1967. It may be served with process through Joe Rathmell, its County Judge at 200 E. 7th Avenue, Ste. 115, Zapata, TX 78076.

### III.
### FIRST CLAIM FOR RELIEF-
### SECTIONS 703& 704 OF THE 1964 CIVIL RIGHTS ACT

31. Tovar was born in the Republic of Mexico in July 1962, and is a naturalized Citizen of the United States who is Hispanic.

32. Plaintiff speaks reads and writes the English language proficiently.

33. Because Plaintiff was reared in the Republic of Mexico and her primary language was Spanish, her English is heavily accented.

34. Tovar first became a TCLOSE [Texas Commission on Law Enforcement Standards and Education][1] certified Jailer and was employed by the Zapata County Sheriff Sigifredo Gonzalez ("Sheriff Gonzalez") as a female detention officer on or about June 4, 2001.

35. Tovar served as a female detention officer at the Zapata County Sheriff's office until October 2008.

36. Tovar left her employment with Zapata County Sheriff's Office to accept employment with for better pay elsewhere. Tovar still maintained her TCLOSE license as a detention officer after she eft the employment of the Zapata County Sheriff's Office.

37. Tovar was reemployed by the Zapata County Sheriff on July 17, 2010.

---

[1] Now Texas Comm'n on Law Enforcement ["TCOLE"].

38. Tovar was rehired by Sigifredo Gonzalez, the then Sheriff of Zapata County. ("Sheriff Gonzalez").

39. Plaintiff's position of employment was that of Detention Officer in the female detention Facilities of the Zapata County Jail.

40. During her tenure as female detention officer under the aegis of Sheriff Gonzalez, Tovar experienced no employment related problems or discipline.

41. In November of 2012 the citizens of Zapata, elected a new Sheriff, Alonzo Lopez. ("Sheriff Lopez").

42. Lopez was sworn in as Sheriff and assumed the duties of that Elective Office on January 1, 2013.

43. Upon the change in administration in the Zapata County Sheriff's Office, Tovar continued to work as a female detention officer for Sheriff Lopez, performing the same duties as she performed under this Defendant's predecessor in Offices.

44. Tovar's employment related problems with Sheriff Lopez, and his subordinates Del Bosque, Ramirez, Garcia, L. Garcia, and Montes began shortly thereafter.

45. During her tenure of employment with Sheriff Lopez TOVAR was continuously and often on a daily referred to as a "mojo" ("meaning mojada") or "wetback" by Frances Vidal ("Vidal") a female detention officer.

46. Vidal was one of Plaintiff's accusers that led to her /actual or constructive discharge by Sheriff Lopez, Montes Del Bosque and Ramirez.

47. Vidal also told Tovar to "go back to Mexico" because of her heavily accented English on an almost daily basis.

48. The frequency of these comments was weekly throughout the course of Tovar's employment as a detention officer at the female detention facility of Zapata County.

49. Throughout the course of Tovar's employment under the aegis of Sheriff Lopez, from January of 2013 to January of 2015, Vidal would make these statements in front of co-workers and inmates.

50. During Tovar's tenure of employment under Sheriff Lopez, Vidal and other coworkers would deprecatingly refer to Tovar Beatriz Longoria and Carmen Salinas, all over the age of 40 as the "golden girls" because they were older females.

51. Resultantly, Tovar continuously began to suffer from nervousness, anxiety depression and a lack of self-esteem manifesting itself in objective physical symptoms.

52. This behavior by Vidal, referenced in the preceding paragraphs was bought to the attention of Tovar's supervisors, Sgt. Carlos Ramírez ("Ramirez"), Henry Martinez ("Martinez"), Luis Martinez ("Martinez") and Captain Hector Garcia ("Garcia").

53. These individuals were the overall supervisors of the Zapata County Jail facilities and served under Sheriff Lopez.

54. All were empowered and delegated with the authority to investigate Tovar's allegations and take remedial action including the disciplining of Vidal and other participants in the racist, ethnic and ageist slurs and depreciating remarks.

55. None of Tovar's complaints of the racial/ethnic/age related insults and names were acted upon by these individuals.

56. Beginning in January 2013 Tovar complained about Vidal's racial and ethnic insults to Luis Garcia on a daily basis.

57. L. Garcia's response to the frequent complaints was that "look into it" and pass the word to Defendant Ramirez in the Plaintiff's chain of command.

58. No action was taken to stop these racial/ ethnic/ race and age related slurs and insults by any of Tovar's supervisors including all of the individually named defendants set forth above.

59. In the years 2013 and 2014 Tovar continued to voice these complaints of a hostile work environment up her chain of command complaining about being called a "golden girl" and a "mojo" and being told to "go back to Mexico".

60. These complaints were made to Supervisors Henry and Luis Garcia, Ramirez and Montes.

61. When nothing was done by any of these individually named defendants to put a stop to Vidal's frequent racist ethnic and age related insults, on or about May 14, 2014 Tovar dual filed Charge No. 451-2014-02137 with the United States Equal Employment Opportunity Commission and the Civil Rights division of the Texas Workforce Commission complaining about the hostile work environment based upon her age, and national origin for having been called a "mojo" as well as a "golden girl" by coworkers Frances Vidal and Magdalena Comparan on a daily basis.

62. More than six months/180 days have elapsed since the dual filing of the above referenced Charge of discrimination, and any amendment thereto with The U.S. EEOC and The TWC-CRD.

63. On or about October 31, 2014 Tovar met with Sheriff Alonzo Lopez to complain to him about, among other matters, retaliation and discrimination including coworkers breaking into or opening her locker, making fun of the way Tovar spoke English (accented) and her age.

64. The Sheriff told Tovar he would review and check on her allegations

65. Tovar later learned from former Sheriff Sigifredo Gonzalez that following her October 31, 2014 meeting with Sheriff Lopez it was reported by a Sheriff's department employee to this former Sheriff that after Tovar left her meeting with Sheriff Alonzo Lopez that Sheriff Lopez met with Captain Ramon Montes

and/or Chief Deputy Raymundo Del Bosque. Sheriff Alonzo Lopez asked one or both if Tovar still had an EEOC suit.

66. According to Sheriff Gonzalez, Montes or Del Bosque answered "yes" or answered in the affirmative.

67. It was reported to Tovar by former Sheriff Gonzalez that Sheriff Lopez said to "screw her" or "vaya a la chingada".

68. On December 24, 2014 after Sheriff Lopez's October 31, 2014 statement referenced in the preceding paragraph, Tovar was on duty at the Women's detention facility at the Zapata County Jail together with Alyssa Pena Martinez a female detention officer ("Alyssa").

69. Alyssa is both younger than the Plaintiff and has never instituted an EEOC/TWC CRD complaint.

70. Alyssa and Tovar were in the booking area of the Zapata County Jail Female Detention facility on that date.

71. There were no cameras or video recording devices in the booking area of the Female Detention Facility of the Zapata County Jail on the dates of December 23, 2014 and December 24, 2014 during Tovar's shift to accurately record events during her on duty time in the booking area.

72. Tovar's shift began at 7:00 p.m. on December 23, 2014 and ended at 7:00 a.m. on December 24, 2014.

73. While Tovar was on duty on the night of December, 23 2014 and the early morning hours of December, 24 2014 Deputy Sheriff Jose A Lozano brought in a new inmate/detainee in custody named.

74. Norma Vasquez ("Vasquez") was brought to the female detention facility between 1:30 to 2:00 am on December 24, 2014.

75. The female detainee Vasquez was brought in at the behest of and for Deputy Sheriff Fernando Hernandez Jr., the deputy arresting Vasquez.

76. Vasquez was very intoxicated when she was brought to the booking area of the female detention facility.

77. Because Vasquez was very intoxicated when she was area brought to the booking area of the female facility, Tovar requested Detention Officer Alyssa Martinez's assistance.

78. Alyssa was Tovar's working partner in the booking area of the Female detention facility.

79. Tovar asked Alyssa to search the inmate.

80. In accordance with Jail Policy and procedure, Tovar indicated to Alyssa that Tovar would do the booking into the computer because Tovar was having problems with the new Jail Solution System (the Booking program used by the jail) and because this inmate was very intoxicated.

81. Vasquez, the detainee/inmate was vomiting as Tovar began the booking process into the computer system.

82. While Tovar commenced booking and asking routine questions, Deputy José a. Lozano and Dispatcher Maricela Martinez were staring at inmate/detainee Norma Vasquez.

83. The U.S. Border Patrol was contacted and summoned to verify whether or not the inmate Norma Vasquez was an illegal alien.

84. When the Border Patrol agents arrived, at the booking area, they asked Vasquez whether she was a U.S. Citizen.

85. Vasquez responded, "I am an American Flag"

86. Thereafter, Vasquez repeatedly stated to the Agents and personnel in the Booking area of the Female Detention facility of The Zapata county Jail," I am an American Flag. "

87. Vasquez was laughing at herself constantly repeating that she was very drunk.

88. At this point Deputy Lozano, Dispatcher Martinez and together with Border Patrol Agents were laughing at inmate Norma Vasquez because she never stopped saying that she was an American Flag and because she was very drunk and throwing up.

89. During the course of the events described in ¶¶68-88 above, Tovar concerned herself with the malfunctioning of the Jail Solution System for booking Vasquez.

90. As stated, Tovar was not able to proceed with the booking and asking questions Vasquez was required to answer in order for Tovar her to input required data into on the computer.

91. Therefore Tovar had Alyssa take complete physical control of Vasquez and perform an unclothed search of this inmate/detainee in a private area away from the sight of others in order for her to rectify the computer problems and ensure the booking process was completed for Vasquez...

92. In taking control of the booking of Vasquez on the computer Tovar exercised her best efforts to complete the booking process due to Vasquez's intoxication and was falling asleep.

93. Because of the prolonged the booking process, the confusion in the booking area, and inmate/ detainee's condition, as well as the one on one private unclothed search of Vasquez by Alyssa, in inputting data Tovar was compelled to rely upon the thoroughness of Alyssa's search of inmate Vasquez

94. Tovar therefore signed the unclothed Search Form relying upon the fact and trusting that Alyssa had conducted a thorough search of Vasquez.

95. Several months before this booking of Vasquez Alyssa attended jailer's school to obtain her Detention Officer Certification from TCLOSE.

96. By no means did Tovar consider Alyssa a newly licensed trainee s because she had been trained and working for 8 months prior to the booking of inmate /detainee Vasquez.

97. Furthermore Tovar trusted the thoroughness of Alyssa's search of inmate detainee Vasquez after observing that Alyssa had removed Vasquez's bra with an underwire, cell phone and personal belonging.

98. Stated in other terms, because of the chaos--the inmate's condition, computer problems, and Alyssa's experience as a licensed jailer and teammate, Tovar signed the unclothed search form.

99. In fact on many prior occasions Tovar found it necessary to correct  many of Alyssa's errors as a detention officer

100. Notwithstanding these events as stated  based upon the events described in ¶¶ 73-97 above, it was falsely alleged  by Sheriff Lopez and his Chief Deputy Montes that Tovar alone that failed to place inmate/ detainee Vasquez inmate on suicide watch because of alleged suicidal statements made by this inmate.

101. Neither the Sheriff nor his Chief Deputy were ever present in the booking area of the jail at the time that inmate detainee Vasquez was booked into the female detention facility of the Zapata County Jail.

102. Inmate/ detainee Vasquez never attempted suicide during booking or during Tovar's shift.

103. Instead this inmate was mocking Tovar and Alyssa and herself because she was drunk.

104. This inmate/detainee was so intoxicated that the content of her conversation after her search and during the booking process was, for the most part, unintelligible and slurred.

105. Tovar never heard Vasquez ever say that she was going to kill herself.

106. What Tovar heard Vasquez say was that she was a saying that she was a "pendeja" (idiot).

107. In response,, Tovar turned to her and said "you shouldn't say those things about yourself".

108. Vasquez in turn responded saying,' don't pay attention to me I am just joking beside I am drunk and tomorrow I probably won't even remember anything happening because I drank so much  tonight."

109. As set forth above, there have been occasions before October 23, 2014 in which Alyssa failed to complete and/or sign booking paperwork and search forms causing Tovar to finish the work for her including signing forms.

110. Neither Tovar nor Alyssa were ever disciplined or suspended for such failures by Alyssa.

111. Improper searches, of other detainees/inmates have been conducted by other female detention officers who have not been disciplined including Frances Vidal

112. . For example an inmate ,Blanca Esquivel, was pushed by Frances Vidal to the point of trying to commit suicide by hanging herself due it to failure of Frances Vidal and other detention officer's failure to follow suicide protocol.

113. This incident involving Vidal had been reported to supervisors and nothing was done to Vidal or other detention officers on duty.

114. Other similarly situated coworkers who have not filed EEOC charges or complained of a racially/ethnically and age related hostile working environment to the sheriff and his designees have committed serious violations of Zapata county Jail policies such as Vidal's pushing Inmate Esquivel to the breaking point of attempting suicide and have received no discipline

115. In summary antecedent to January of 2015, other serious violations of Jail policies had been committed by Tovar's coworkers and no punishment or suspension without pay was ever meted out to them in contrast to Tovar.

116. On January, 9 of 2015 TOVAR sustained an injury and was treated at a hospital.

117. Tovar was released to work on January 13, 2015.

118. On January 12, 2015 Tovar reported to work; this in spite of the fact that Tovar was in excruciating pain from her injury.

119. .Due to the intensity of her stress, pain and pressure Tovar was unable to ambulate

120. Her supervisors Ramirez Montes Garcia and L. Garcia ignored this fact allowing her to work rather than sending her home...

121. When Tovar finished her shift on January, 13 2015 she still in pain and could not think clearly.

122. A the end of her shift, was summoned into the office Sgt. Carlos Ramirez and Sgt. Elizondo her supervisors who acting on behalf of the sheriff and his Chief Deputy Del Bosque informed her she was suspended without pay  for six days the an improper Vasquez search and failure to comply with suicide protocol on the Norma Vasquez booking.

123. Ramirez and Elizondo also informed the Plaintiff that she was under investigation for this same incident and that the investigation would/could result in her firing.

124. Sgt. Ramirez presented Tovar with four forms for Tovar to sign.

125. All contained the same charges.

126.  Tovar asked why four forms.

127. , .Tovar was the only Detention officer suspended for the alleged improper search of inmate Vasquez.

128. At the meeting with Sergeant Ramirez Tovar, questioned why she was singled out for suspension.

129. Tovar told Sgt. Ramirez he knew that there had been serious and improper searches conducted by other female detention officers and Detention officers had complained and nothing has ever done.

130. For Example an inmate was left with a cell phone and cocaine, a knife, cash money, body piercing inside a holding cell.

131. Suicide protocol was not followed, and the inmate received no medical clearance.

132. Hence Tovar was constructively discharged as a Female detention officer because of the hostile work environment and the failure to take remedial measures.

133. On that same day, Sgt. Carlos Ramirez telephonically fired Tovar when she stated that she no intentions of quitting.

134. By virtue of the acts and /or omissions described above, Defendant Sheriff and those to whom he delegated policymaking authority terminated Tovar for complaining of a racially and ethnically hostile working environment and having instituted proceedings complaining of same with the Equal Employment

Opportunity commission and the Texas Workforce commission Civil Rights Division in contravention of §§ 703 and 704 of the 1964 Civil Rights Act.

135. As a proximate result of the Defendants; unlawful actions, Plaintiff has sustained economic harm in the form of back pay and front pay as well as the loss of her emoluments of employment as an employee of The Zapata County Sheriff and Zapata County.

136. Plaintiff requests that this court enter an equitable order requiring Defendants Sheriff, Commissioners Court and County to reinstate her to her former position and her TCOLE License Status to active and Honorable,

137. As a further proximate result of Defendants' unlawful acts and/or omissions, Plaintiff has sustained economic damages for the loss of enjoyment of life in an amount no less than $200,000.00

138. In order to protect and vindicate her rights under Title VII of the 1964 Civil Rights Act,  The Age Discrimination in Employment Act of 1967 and the Reconstruction Era Civil Rights Statutes, including 42 U.S.C.§ 1988, it became necessary for Plaintiff to engage and retain the services of the undersigned attorney to prepare and prosecute this action.

139. Accordingly, Plaintiff requests that she be awarded a reasonable attorneys fee as authorized by these statutes.

### IV.
### SECOND CLAIM FOR RELIEF -
### RACE DISCRIMINANTION AND RETALIATION –FOURTEENTH
### AMENDMENT TO U.S. CONSTITUTION, 42 U.S.C. §§1981 AND 1983

140. Plaintiff realleges and reasserts verbatim the facts averments and denials contained in ¶¶1-140 above.

141. Historically in the State of Texas persons of Hispanic ancestry and of Mexican National Origin such as the Plaintiff have been considered a "race" other than white.[2]

142. As a direct and proximate result of the Sheriff's  County's and Individually named  Defendants' unlawful actions and omissions, Plaintiff has sustained actual damages in the amounts described above.

143. In order to punish and deter flagrant violations of Plaintiff and others' right to be free from a racially and ethnically polluted work environment, Plaintiff requests that in addition to an award of actual damages, that she be awarded punitive damages against the individually named Defendants in amount proportional to her injuries[3] and the individual defendants' malicious and reckless conduct.[4]

---

[2] *Saint Francis College v. al-Khazraji*,481 U.S. 604 (1987)
[3] *Smith v. Wade*, 461 U.S. 30 (1983)
[4] *Id.*

## V.
## THIRD CLAIM FOR RELIEF -
## AGE DISCRIMINATION AND RETALIATION UNDER THE AGE
## DISCRIMINTION IN EMPLOYMENT ACT OF 1967, 29 U.S.C §623 (a) &
## (d)

144. Plaintiff realleges and reasserts the facts denials and averments set forth in¶¶1-
142 above.

145. Defendant County and, Sheriff's actions and omissions set forth above were
wilful as that term is defined by the Fair Labor standards Act and the ADEA
entitling Plaintiff to an award of liquidated damages as set forth in those Acts.

146. Plaintiff has complied with all administrative prerequisites to the institution
of her claims under the ADEA.

## VI.
## FOURTH CLAIM FOR RELIEF- SUPPLEMENTAL STATE
## DISCRIMINATION AND RETALIATION CLAIMS UNDER CHAPTER
## 21 OF THE TEXAS LABOR CODE-

147. Plaintiff realleges and reasserts the facts denials and averments set forth in¶¶1-
146 above.

## PRAYER

Plaintiff requests that Defendants and each of them be cited to appear and give
answer and that upon a just and expeditious trial of this action that she have and
recover the legal and equitable relief requested above, her costs of court and

attorney's fees as an incident thereto and such other and further relief to which she

may show herself to be justly entitled.

Respectfully submitted,


_____/s/_____
Murray E. Malakoff
Texas Bar No.12853700
Federal Admission ID 5762
1319 Convent Avenue Laredo, Texas 78040
Tel. (956) 724-2889
Fax.(956)724-2914
malakoff@malakofflaw.com
Attorney In Charge for Plaintiff